**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:16-cr-10278-NMG |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MOUSTAFA MOATAZ ABOSHADY | ) | ORAL ARGUMENT REQUESTED |
|  | ) |  |
| Defendant. | ) |  |
|  | ) | REDACTED – PUBLICLY FILED |
|  | ) |  |

**MEMORANDUM IN SUPPORT OF DR. MOUSTAFA ABOSHADY'S PRELIMINARY MOTION TO COMPEL DISCOVERY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16 AND LOCAL RULE 116.3**

**I.    Introduction**

The Government's discovery in this matter so far amounts to over 2.2 terabytes of electronic data, the equivalent of over one trillion pages of typewritten text. Yet despite producing this vast array of material, the Government continues to hold back critical information that Dr. Moustafa Aboshady requires in order to marshal the evidence and mount a defense. As a result, by way of this motion, Dr. Aboshady moves this Court to compel the Government to produce:

- Evidence regarding the promises, rewards, or inducements provided to the witnesses the Government identified internally as "potential witnesses" as of the expiration of the 28-day discovery period over two months ago;

- Translated portions of certain proceedings that took place before the grand jury in another language; and

- The Government's legal instructions and argument to the grand jury.

Because the Government lacks a legal basis for withholding any of the above evidence, Dr. Aboshady respectfully requests that the Court order the Government to produce this material in discovery.

## II.     Procedural and Factual Background

Dr. Aboshady is a physician who was indicted on September 27, 2016 and is now before this Court.  Dr. Aboshady worked for his uncle, Dr. Fathalla Mashali ("Dr. Mashali" or the "Uncle") while Dr. Aboshady was studying to become an American accredited physician.  The Uncle was the owner and—except for a few brief intervals—the sole attending physician at New England Pain Associates ("NEPA").  In July 2012, several NEPA employees—each of whom was either a physician assistant ("PA") or registered nurse ("RN")—wrote to the Massachusetts Board of Registration in Medicine,[1] alleging various misconduct by Dr. Mashali in his operation of NEPA and care of patients.  *United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 4-1 (the "Phelps Aff."), ¶ 9 (D. Mass. Feb. 8, 2014).  The alleged misconduct included upcoding, billing insurers for services not rendered, and inappropriate prescribing practices for narcotics.  Phelps Aff. ¶ 10.

In March 2014, the Government presented its health care fraud case against the Uncle to a grand jury.  That grand jury returned an indictment on March 13, 2014, alleging nine counts of health care fraud in violation of 18 U.S.C. § 1347 against Dr. Mashali.  *United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 19 (the "Mashali Indictment") (D. Mass. Mar. 13, 2014).  The government subsequently sought two superseding indictments, which were returned on October 16, 2014 and April 16, 2015.  *See United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 97 (the "Mashali First Superseding Indictment") (D. Mass. Oct. 16, 2014);

---

[1] The PA's and RN's also sent copies of this letter to the Boston Field Office of the Drug Enforcement Administration and the Boston Field Office of the Federal Bureau of Investigation.  Phelps Aff. ¶ 11.

*United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 131 (the "Mashali Second Superseding Indictment") (D. Mass. Apr. 16, 2015). Under the operative indictment, Dr. Mashali now stands accused of health care fraud, conspiracy to commit mail fraud, 18 U.S.C. § 1349, and money laundering, 18 U.S.C. § 1957

The same 2012 letter to the Massachusetts Board of Registration in Medicine that prompted the investigation into Dr. Mashali also accused Dr. Aboshady of altering patient encounter notes and other documents. When the Government elected to bring a criminal case against Dr. Aboshady—over 30 months after charging Dr. Mashali—the Government again followed the letter authors' lead and presented a false statements case to the grand jury against Dr. Aboshady. *See generally United States v. Aboshady*, Case No. 1:16-cr-10067-RWZ, ECF No. 3 (the "Aboshady Indictment") (D. Mass. Sept. 27, 2016).

During its presentation to the grand jury regarding Dr. Aboshady, the Government relied heavily on the transcripts of testimony given before the grand juries that indicted Dr. Mashali. Out of fourteen sessions before the grand jury that indicted Dr. Absohady that the Government has so far disclosed, five consist in large part of agents reading transcripts of testimony before the Mashali grand jury into the record. (*See generally* Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G.)

One such transcript—the testimony of ▇▇▇▇▇▇▇ before the Mashali grand jury[2]— contains nearly three dozen references to untranslated "Speaking in Arabic" between the witness and an interpreter. (*See* Exhibit H at 6-9, 25-28, 33, 37, 39-41, 43, 53, 82, 91, 95, 96, 99, 101, 104, 107, 109-10, 112, 115.) Although the witness is a fluent English speaker who conducted business in English and testified before the grand jury in English, the Government has declined

---

[2] It does not appear that this witness testified before the grand jury that indicted Dr. Aboshady.

3

to articulate why an interpreter was necessary at the grand jury testimony. Nor has the Government had this unspecified "Speaking in Arabic" translated or otherwise explained.

The grand jury separately indicted Dr. Aboshady on September 27, 2016. The Aboshady Indictment charges *none* of the crimes charged against Dr. Mashali. Instead, the indictment charges Dr. Aboshady with conspiracy, 18 U.S.C. § 371, and false statements in connection with a federal health care program, 18 U.S.C. § 1035, as well as seeking criminal forfeiture. *See generally* Aboshady Indictment. As the Government properly concedes, these charges are "mutually exclusive" of the charges in the Mashali Second Superseding Indictment. (*See* Exhibit B at 5 (Discovery Letter from Government, ECF No. 38, Dec. 28, 2016).)

Since the separate indictment of Dr. Aboshady, the Government has treated the two cases as one. The Government has so far provided more than 2.2 terabytes of data to Dr. Aboshady in discovery, covering over 35,000 bates numbers. All the discovery provided to Dr. Aboshady bears the bates prefix "FM"—Dr. Mashali's initials. Moreover, over 90 percent of "FM" bates numbers provided to Dr. Aboshady are consecutive, suggesting that the Government has produced virtually *identical* discovery in both cases.

The Government has also stated in open court that it views the two cases as one. At Dr. Aboshady's arraignment, counsel for the government initially apprised him of the maximum penalty for the charges against *Dr. Mashali* instead of the charges pending against Dr. Aboshady. The Government then filed an identical motion for alternative victim notification procedures under the Crime Victims Rights Act in both cases. *United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 287 (D. Mass. Nov. 1, 2016); *United States v. Aboshady*, Case No. 1:16-cr-10067-RWZ, ECF No. 21 (D. Mass. Nov. 1, 2016). When Dr. Aboshady opposed that motion, the government responded by invoking the rights of *Dr. Mashali's* patients—who Dr.

Aboshady did not treat and is not alleged to have harmed in any way—to justify its request. *United States v. Aboshady*, Case No. 1:16-cr-10067-RWZ, ECF No. 29 (D. Mass. Nov. 29, 2016). And at the hearing on that motion, counsel for the Government said that Dr. Mashali and Dr. Aboshady were "tied at the hip" and articulated the Government's theory that "[Dr.] Mashali could not have done what he did but for [Dr.] Aboshady."

After the Government produced discovery, counsel for Dr. Aboshady and counsel for the Government exchanged letters regarding certain discovery requests. (*See* Exhibit A (Discovery Letter from Dr. Aboshady, ECF No. 36, Dec. 14, 2016); Exhibit B (Discovery Letter from Government, ECF No. 38, Dec. 28, 2016).) After resolving some of the requests by letter, the parties conferred by telephone on January 10, 2017 and resolved some additional discovery issues. The three matters raised in this motion represent the remaining unresolved discovery questions from this first exchange.

**III.   The Government Must Disclose Evidence Regarding The Inducements Provided To "Some Potential Witnesses"**

    A.  *Relevant Discovery Request And Government Response*

        i.  <u>Dr. Aboshady's Discovery Request</u>

<u>Discovery The Government Promised But Has Yet To Provide</u>. In the Government's letter dated November 1, the Government acknowledged its obligation to provide additional discovery. The letter specifically identified as forthcoming discovery:

> …
> - Exculpatory evidence which the Government must disclose under Local Rule 116.2(b)(l), including:
>   - The "[p]romises, rewards, or inducements [which] have been given to some potential witnesses" and the identities of such witnesses;
>   - The "criminal records of [the Government's] anticipated case-in-chief witnesses"; and
>   - The "outstanding criminal matters" of the Government's case-in-chief witnesses.

        ii.  <u>Government Response</u>

5

The government will comply with Local Rules 116.1 & 116.2.

Local Rule 116.2(b)(1) does not contain the term "potential witnesses," but instead references "any witness whom the government anticipates calling in its case in chief."[3] There are hundreds, if not thousands, of "potential" witnesses in this case, but only the witnesses that the government "anticipates calling in its case in chief" are at issue with respect to identifying the promises, rewards, inducements, and criminal records pertaining to these potential witnesses. *See* Local Rule 116.2(b)(1)(C-D). The government has disclosed current, pertinent information under Local Rules 116.1 & 116.2 and will update you if, and when, such information changes.

Kindly adhere to Local Rule 116.3(d), which provides that "[a] defendant participating in automatic discovery should not request information expressly required to be produced under" the Local Rules "because all such information is required to be produced automatically in any event."[4]

### B. Argument

Put simply, the Government is playing word games to avoid its obligation to disclose exculpatory evidence in a timely fashion under Local Rule 116.2. The Government has stated that it had identified internally "some potential witnesses" to whom it had given "any promise, reward, or inducement" as of the close of the 28-day discovery period. (*See* Exhibit I at 4 (Discovery Letter from Government, Nov. 1, 2016).) Yet the Government declined to produce the "statement" required by Rule 116.2(b)(1)(C) at that time because it claimed to be "evaluating whether it anticipates calling these witnesses in its case-in-chief." (See Exhibit I at 4 (Discovery Letter from Government, Nov. 1, 2016).) The Government did not seek Dr. Aboshady's counsel's consent to extend the 28-day discovery period to permit this "evaluat[ion]," nor did it seek the Court's leave to do so.

As a result of the Government's default under its 28-day discovery obligations, Dr. Aboshady requested the information that the Government concededly has right now—the

---

[3] [Footnote 1 in Government's Response] If you are quoting from the government's 28-day discovery letter and not from the Local Rules, kindly be cognizant that the scope of the government's discovery produced to you so far has greatly surpassed the scope of the disclosures required under Local Rules 116.1 & 116.2. The government's timely and broad discovery production, however, does not create a binding obligation on the government to continue to produce information beyond the ambit of the Local Rules.

[4] [Footnote 2 in Government's Response] The statement in your letter that "[t]o date, the Government has provided none of this discovery" is inaccurate. In the electronic folders "BOP" and "Positive Hits on Criminal Records" provided to you, the government disclosed criminal records.

required "statement" about the "potential witnesses" to whom the Government has given a "promise, reward, or inducement." *See* D. Mass. L. R. 116.2(b)(1)(C). The Government has not only refused to provide this information, but it has also neither completed its "evaluat[ion] [of] whether it anticipates calling these witnesses in its case-in-chief" nor identified a time period when it will do so and comply with its now-two-months-overdue discovery obligations.

The Government's hairsplitting between "potential" witnesses and "anticipated" witnesses is pure gamesmanship designed to delay the day when it must admit which trial witnesses it has rewarded and how handsomely beyond the day the Local Rules require it to do so. Because such gamesmanship runs counter to the letter and spirit of the Local Rules' discovery provisions, Dr. Aboshady's discovery request should be granted, and the Government should be required to produce the "statement" required by Rule 116.2(b)(1)(C) for all of the "potential witnesses" it has already identified internally and to which it has given "any promise, reward, or inducement."

**IV.    The Government Must Provide Translated Portions Of Grand Jury Proceedings**

   *A.   Relevant Discovery Request And Government Response*

      iii.  <u>Dr. Aboshady's Discovery Request</u>

<u>Translation Of Grand Jury Testimony.</u>  Nearly three dozen times during the grand jury testimony of ████████ on-the-record matters are rendered merely as "(Speaking in Arabic.)." The Government must provide adequate translation of these portions of the grand jury proceedings. Moreover, Dr. Aboshady reserves his right to request in the future the actual recording(s) of these portions of the grand jury proceedings.

      iv.  <u>Government Response</u>

The government declines to comply with this request.
   As you are aware from the very Grand Jury transcript you cite, the government had a court certified interpreter present for the witness in case the witness needed any assistance understanding or answering questions posed to him/her. See Bates No. FM0034231. The instances of "(Speaking in Arabic)" you reference are the interactions between the witness and the court certified interpreter. The government is not aware of any precedent, nor did you cite

any, for translating the interactions between a witness and a court-certified interpreter when the witness's resulting testimony and/or the interpreter's translations are on the record. The government provided you the entire transcript of the witness's testimony shortly after the arraignment as a courtesy, unprompted, even though the timing of this particular disclosure obligation most likely derives from the Jencks Act, 18 U.S.C. § 3500 and not Local Rule 116.2(b)(1).

   *B.  Argument*

   A key Government witness testified before the grand jury.  The witness testified in English about business the witness conducted primarily in English over a period of several years.  The witness nevertheless had the assistance of an interpreter before the grand jury, and the grand jury transcript reveals several instances where the witness and the interpreter conversed in Arabic.  (*See* Exhibit H at 6-9, 25-28, 33, 37, 39-41, 43, 53, 82, 91, 95, 96, 99, 101, 104, 107, 109-10, 112, 115.)

   Dr. Aboshady's discovery request seeks only to translate these brief interactions.  The witness' facility with English rendered the interpreter's services unnecessary for large portions of the grand jury testimony.  The transcript suggests that the interpreter and the witness only spoke when the witness had difficulty understanding an English term or the witness asked for assistance in rendering an Arabic term into English.  (*See* Exhibit H at 6-9, 25-28, 33, 37, 39-41, 43, 53, 82, 91, 95, 96, 99, 101, 104, 107, 109-10, 112, 115.)   These interactions suggest that the interpreter went beyond mere word-for-word translation and assisted the witness with the "meaning" of the prosecutor's questions and the witness' answers.

   Such filtering or distilling of the prosecutor's questions or the witness' answers runs afoul of the Court Interpreters Act, 28 U.S.C. § 1827.  That statute requires word-for-word translation of on-the-record proceedings—*and nothing more*—unless the parties agree otherwise.  *See United States v. Torres*, 793 F.2d 436, 443 (1st Cir. 1986) (error when "the district court directed the interpreter to use the summary mode of translation without obtaining the consent of

8

all parties"). Impermissible deviation from word-for-word translation includes the interpreter's gloss on a question or answer, such as adding "but what he means is" to on-the-record statements and other similar commentary. *United States v. Gomez*, 908 F.2d 809, 811 (11th Cir. 1990).

Translation of these limited portions of the grand jury proceedings is necessary to evaluate whether such impermissible filtering or distillation occurred and distorted the witness' testimony before the grand jury. Because the witness offered the only testimony about ▌ ███████████████████████████████████████████████████████████████████, distorted translation during testimony would constitute "an error in the grand-jury proceeding" sufficient to dismiss the indictment. *See* Fed. R. Crim. P. 12(b)(3)(A)(v).

Moreover, the Government will undoubtedly call this witness at trial; indeed the Government's response to Dr. Aboshady's letter admits as much by suggesting that the obligation to disclose the witness' grand jury testimony arises from the Jencks Act rather than from Local Rule 116.2(b)(1). (*See* Exhibit B at 3 (Discovery Letter from Government, ECF No. 38, Dec. 28, 2016).) Any distortions in translation during the prior testimony before the grand jury are highly material to preparing to address the witness' trial testimony and cross-examine the witness.

Dr. Aboshady's discovery request should therefore be granted, and these portions of the grand jury proceedings should be translated.

**V.   The Government Must Provide Its Legal Instructions And Argument To The Grand Jury**

   A. *Relevant Discovery Request And Government Response*

      i.   Dr. Aboshady's Discovery Request

Legal Instructions And Argument To Grand Jury. The Government's disclosure of certain of the proceedings before the grand jury does not include the Government's legal instructions and argument to the grand jury. As one District of Massachusetts judge recently

noted, there is "no reason why the prosecutors' instructions to the grand jury should be kept secret." *United States v. Facteau*, 1:15-cr-10076-ADB, ECF No. 478 at 9-10 (D. Mass. Aug. 22, 2016). The Government should produce the transcript of its legal instructions and argument to the grand jury.[5]

    ii. <u>Government Response</u>

The government declines to comply with this request.

At Aboshady's arraignment, the undersigned counsel incorrectly began to state the maximum penalties pertaining to the indictment of Mashali, Aboshady's uncle who owned New England Pain Associates and who had been indicted about a year and a half prior to Aboshady's arraignment. The undersigned counsel caught the error, and the maximum penalties were then correctly stated on the record. You incorrectly assert, however, without any specifics, that "in its filings to the Court requesting alternative victim notification procedures, and again at the status conference on November 30, the Government has repeatedly conflated the charges against [] Aboshady with those against [] Mashali." This assertion is plainly wrong.

In any event, your suggestion that the government might have "confused the two matters in its presentation to the grand jury" is a futile attempt to spin straw into gold. "[T]he existence of [the court's] discretion" to permit access to Grand Jury materials under Rule 6(e) "is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *United States v. Acherman*, 2015 WL 6126811, No. 15-10046-LTS, at *2 (D. Mass. Oct. 16, 2015) (Dein, J.), quoting *United States v. Rodriguez-Torres*, 570 F. Supp. 2d 237, 241 (D. P.R. 2008).

The undersigned counsel's error in merely misstating, and then correcting, the maximum penalties at Aboshady's arraignment does not give rise to the level of particularized need to justify the disclosure of the legal instructions, let alone the government's argument, to the Grand Jury. *See United States v. George, 839 F. Supp. 2d 430 (D. Mass. 2012)*; *Acherman*, 2015 WL 6126811. Moreover, as you are aware, on October 26, 2015, months after Mashali's indictment, the undersigned counsel met with Aboshady and Aboshady's then counsel, Brian Kelly, and clearly indicated to attorney Kelly and Aboshady that Aboshady was the target of a criminal investigation. Despite the false information provided by Aboshady through counsel to the government after that meeting,[6] and after multiple requests from your colleague, George W. Vien, for a follow-up meeting, the government agreed to extend the courtesy to your legal team

---

[5] [Footnote 1 in Dr. Aboshady's Discovery Letter] Although the Government's legal instructions to the grand jury do not fall within Federal Rule of Criminal Procedure 6 such that Dr. Aboshady must make a particularized showing of need for the Government to produce them, such need plainly exists here. At Dr. Aboshady's arraignment, in its filings to the Court requesting alternative victim notification procedures, and again at the status conference held on November 30, the Government has repeatedly conflated the charges against Dr. Aboshady with those against Dr. Mashali. If the Government—inadvertently or purposefully—confused the two matters in its presentation to the grand jury, the indictment against Dr. Aboshady would be subject to dismissal.

    The grand jury transcripts which the Government has disclosed suggest other irregularities. Counsel for the Government recently identified to counsel for Dr. Aboshady four documents which "stand out." Before the grand jury, the Government presented the same documents with only the following colloquy: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FM0020752. Such unilluminating factual testimony about evidence which "stand[s] out" raises questions about what the unproduced portions of the grand jury proceedings show about the Government's methods of guiding the grand jury's deliberations through almost 500 exhibits and the testimony of dozens of witnesses.

[6] [Footnote 3 in Government's Response] The proffer letter Aboshady signed does not protect him for providing false information to the government.

10

and met with your team multiple times over a period of months, permitting you to review sensitive pre-indictment materials at your convenience and explaining their significance, again clearly articulating to you that Aboshady, not Mashali, was the target of that investigation.[7] Throughout that period, not once did the undersigned counsel conflate the Mashali and Aboshady investigations in discussing the matter with your defense team. Moreover, the indictments against Mashali and Aboshady contain mutually exclusive charges, undermining even further your contention that the government might have conflated the two cases at the time of instructing the Grand Jury.[8] Even the government's alternative victim notification motion you reference contains a caption for both matters (as the two cases have the same victims per 18 U.S.C. § 3771), and was filed on both the Mashali and Aboshady dockets.

You further allege, without any foundation, that "[t]he grand jury transcripts . . . suggest other irregularities." You cite only one supposed example where, after indicting Aboshady, the government took the initiative to identify for you a few important exhibits that "***stand out***" to save you and your colleagues time reviewing thousands of pages of discovery, not to mention hundreds of thousands of electronic files. The government communicated these exhibits that "**stand out**" by email, dated November 14, 2016, to your colleague, George W. Vien. That email from the undersigned counsel, which you reference, states in full:

> George, a lot of emails ***stand out*** [emphasis added] for me, but I am not sure if you have seen these yet--although you will see them in the GJ presentation.
> The submission of fake urine drug test results apparently commenced after BMC [insurance company] declined post-audit payment, indicating to Mashali, among other things, the long delays to test urine (and apparently rejecting the false explanation that Aboshady had provided them in the letter drafted in Mashali's name)[.] What you see here appears to be the genesis of the creation of fake urine test results.
> What you see is that [an employee from the Cairo Office] emails [another employee] in Egypt two real test results in PDF and receives back the edited versions in Microsoft Word. [The first employee] then forwards the fake versions to Aboshady, with a fairly conspicuous subject line, "Editing Files in H.F [Health Fusion]" and writing that they could upload the false results into HealthFusion if they wanted to. After that, we see false urine test results emailed from Egypt to Aboshady, etc for various audits, and Aboshady asking Egypt for urine test results. This answers a number of questions about Aboshady's personal involvement/intent, and rebuts pretty strongly the idea that [an employee in Egypt] was somehow using Aboshady's email account without his knowledge.
> It is unclear how this email, guiding you to and explaining in good faith certain important

---

[7] [Footnote 4 in Government's Response] George W. Vien met the undersigned counsel for the first time on or about February 29, 2016. On that and other multiple occasions, Vien was shown a significant volume of documents incriminating Aboshady and was permitted to disclose some of those documents to Aboshady. For example, on March 2, 2016, the undersigned counsel indicated to Vien by email: "[O]nce we cover a critical mass of materials, I can give you an opportunity to spend time with a subset of documents you deem important and ask me follow-up questions."

[8] [Footnote 5 in Government's Response] The indictment against Mashali alleges health care fraud, 18 U.S.C. § 1347; mail fraud conspiracy, § 1349; and money laundering, § 1957. The indictment against Aboshady alleges conspiracy to make false statements in connection with a federal health care program, §§ 371 and 1035; and making false statements in connection with a federal health care program, § 1035.

exhibits to save you and your team time, points to any "irregularities" in the grand jury.[9] After you received this email, you did not reach out to the government with any questions or concerns.

    B. *Argument*

        i. <u>Legal Instructions And Argument Are Subject To Disclosure With No Showing Of "Particularized Need"</u>

Federal Rule of Criminal Procedure 6(e) generally prescribes strict secrecy requirements and limited disclosure provisions for "a grand-jury matter." But not everything that happens in the grand jury room is a "grand-jury matter" entitled to such protection. Because a prosecutor's legal instructions and argument to a grand jury are not qualifying "grand-jury matter," this Court may order their disclosure here unconstrained by the limitations of Rule 6(e).

It is well-settled that "[t]he proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not." *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973). And such ground rules include "the content of the court's charges to the grand jury." *Id.* Accordingly, "[legal] instructions do not fall within the bar of Rule 6(e) because their disclosure would not reveal the substance or essence of the grand jury proceedings."[10] *United States v. Diaz*, 236 F.R.D. 470, 477–78 (N.D. Cal. 2006); *see also United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) ("The legal instructions given to the grand jury regarding the charges on which they are

---

[9] [Footnote 6 in Government's Response] You seem to suggest that the government's authentication of these exhibits in the Grand Jury appears too cursory given the exhibits' significance. Setting aside that this point has no legal relevance, as you do not allege that the exhibits' authentication or presentation was somehow improper, you also incorrectly suggest in your letter that the exhibits were authenticated through only one question posed by the government, at Bates No. FM0020752. However, these exhibits were thoroughly authenticated through many witnesses on multiple occasions, including by the witness on the day of testimony in question. Please refer to these pages of the transcript referencing the search warrant information and authentication: Bates No. FM0020739, FM0020741 (and multiple other transcripts authenticate these emails)

[10] *United States v. Lopez-Lopez*, 282 F.3d 1 (1st Cir. 2002) is not to the contrary. In *Lopez-Lopez*, the defendant sought to dismiss an indictment on the basis of inadequate legal instruction to the grand jury. *Id*. at 8-9. *Lopez-Lopez* does not address the appropriate standard for reviewing a request for discovery of the legal instructions—if any—that were given to the grand jury. *See id.*

deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings.");

*United States v. Peralta*, 763 F. Supp. 14, 20 (S.D.N.Y. 1991).

Sound policy reasons support such a rule. As a judge in this District recently explained:

> What a prosecutor says to the grand jurors before asking them to return an indictment does not compromise the interests sought to be protected by grand jury secrecy. Further, allowing the instructions to be disclosed through the discovery process would help ensure the integrity of the grand jury process, incentivize prosecutors to be careful in instructing a grand jury, and give some teeth to the grand jury's "shield" function. . . . It would also alert defense counsel to the possibility of an irregularity that could warrant a review of the grand jury process in a particular case. Given the length of time that it takes a case to get to trial, the stigma and harm done to a defendant simply by virtue of being indicted, even if later acquitted, and the largely unfettered power of the grand jury, the small step of allowing a defendant some visibility into the legal instructions given to the grand jury would help protect the defendant's rights, while fully maintaining the secrecy that is so fundamental to the functioning of our grand jury system.

*United States v. Facteau*, No. 1:15-CR-10076-ADB, 2016 WL 4445741, at *5 (D. Mass. Aug. 22, 2016) (internal citations omitted).

The Government has articulated no legal basis other than the "particularized need" requirement for disclosure under Rule 6(e) for withholding the legal instructions and argument to the grand jury here. Because Rule 6(e) does not supply the standard here—and because Dr. Aboshady therefore need not show any "particularized need" to justify his request for the Government to produce its legal instructions and argument to the grand jury—disclosure of such materials is appropriate.

    ii. <u>Dr. Aboshady Has Shown A Particularized Need To Disclose The Legal Instructions And Argument To The Grand Jury</u>

Even if Dr. Aboshady were required to show a "particularized need" for the disclosure of the Government's legal instructions and argument to the grand jury (and, as discussed above, he

13

Case 1:16-cr-10278-NMG   Document 44   Filed 01/11/17   Page 14 of 18

is not), such a need exists here.  To show "particularized need," one must show that: "1) the material sought is needed to avoid a possible injustice in another judicial proceeding, 2) the need for disclosure outweighs the need for continued secrecy and 3) the request is structured to cover only what is needed."  *United States v. George*, 839 F. Supp. 2d 430, 437 (D. Mass. 2012), *aff'd* 761 F.3d 42 (1st Cir. 2014) (citing *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959)).  All three elements exist here.

First, the Government's legal instructions and argument to the grand jury are needed to avoid the possible injustice of a fatally tainted indictment.  The prosecutions against Dr. Aboshady and Dr. Mashali are factually similar but legally distinct.  Among many other parallels, the investigations into the two men originated from the same letter to the Massachusetts Board of Registration in Medicine, and the Government recycled significant portions of the testimony before the Mashali grand jury word for word in the Aboshady grand jury proceedings.  (*See* Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G.)  Only careful attention to the legal distinctions between the two prosecutions and the specific unlawful conduct alleged against Dr. Aboshady could ensure that the grand jury returned an indictment based solely on the evidence against him, rather than based in some part on evidence of alleged wrongdoing by Dr. Mashali alone.

The circumstantial evidence—namely, the Government's *post*-indictment words and actions—suggests that such careful separation did not take place *pre*-indictment before the grand jury.  The Government has produced nearly all the same discovery in both cases with the same bates numbers—which bates numbers all include Dr. Mashali's initials.  It merged the charges against the two defendants at Dr. Aboshady's arraignment.  It filed an identical motion seeking

14

identical relief in both cases, then defended its request for such relief in Dr. Aboshady's case by invoking conduct it has charged solely against Dr. Mashali. And at the hearing on that identical motion, its counsel stated unequivocally that Dr. Mashali and Dr. Aboshady are "tied at the hip" and that the Government's theory of the case is that "[Dr.] Mashali could not have done what he did but for [Dr.] Aboshady."

Other mistakes in the grand jury process also suggest that such careful separation did not take place. The Government simply lost the original copies of exhibits presented to the grand jury. (*See* Exhibit I at 2 (Discovery Letter from Government, Nov. 1, 2016).) And Count I of the Aboshady Indictment violates the command in Federal Rule of Criminal Procedure 7(c)(1) to "give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."[11] *See* Aboshady Indictment ¶¶ 25-47 (purporting to charge "conspiracy" but failing to cite 18 U.S.C. § 371 or any other statute or authority proscribing "conspiracy"). This inattention to detail in the grand jury process is further circumstantial evidence that the Government did not carefully separate two prosecutions when it instructed and argued before the grand jury that indicted Dr. Aboshady.

Ample circumstantial evidence therefore suggests that the Government did not pay careful attention to the distinctions between the two prosecutions before the grand jury. And if the Government did not carefully separate the two matters—especially if it suggested that the two men were "tied at the hip" or confused the charges against them before the grand jury too—then the indictment against Dr. Aboshady would be tainted and subject to dismissal. The only way to find out if such a fatal error took place is to look at what the Government actually said in its instructions and argument to the grand jury. Disclosure of those materials is therefore necessary to avoid the injustice of a tainted indictment here.

---

[11] Dr. Aboshady reserves his right to file a motion to dismiss the indictment on this basis.

Second, the need for disclosure of the legal instructions and argument to the grand jury outweighs the secrecy interest involved. As discussed above, the possible injustice of a defective indictment weighs heavy here. Moreover, the secrecy interest in these portions of the grand jury proceedings is minimal. The Government's legal instructions and argument to the grand jury reveal the names of no witnesses, disclose no sensitive investigative sources or methods, and will not result in the dissemination of any third-party's confidential information. Accordingly, the functioning of future grand juries and law enforcement operations will suffer no harm if the Court orders disclosure here. *See Douglas Oil Co.*, 441 U.S. at 222 (discussing policy rationales for keeping substantive testimony and evidence presented to grand jury secret). Indeed, the discovery the Government has already provided contains *more* sensitive grand jury material than the Government's legal instructions and argument to the grand jury. The substantial risk of the injustice of a tainted indictment far outweighs the need for continued secrecy with respect to the legal instructions and argument before the grand jury.

Third, Dr. Aboshady's request for the legal instructions and argument to the grand jury is structured to cover only what is necessary. Dr. Aboshady has issued no blanket request for all of the unproduced portions of the grand jury proceedings or any other similarly overbroad request. Instead, the request for the legal instructions and argument before the grand jury is limited to the specific materials most likely to shed light on whether any confusion or commingling of the prosecutions of Dr. Mashali and Dr. Aboshady took place that might affect the validity of the indictment.

Because Dr. Aboshady has shown that disclosure of the Government's legal instructions and argument to the grand jury is necessary here to avoid the possible injustice of a tainted indictment, that the need for such disclosure outweighs the minimal secrecy interest here, and

that Dr. Aboshady's request is narrowly tailored to only the necessary materials, he has shown the "particularized need" required for disclosure under Rule 6(e). The Court should therefore order the requested discovery.

### iii. The Court May Order *In Camera* Review In Lieu Of Discovery

"Some courts have ordered an *in camera* review of [grand jury] legal instructions, as a way to protect against inadvertent disclosure of secret materials." *United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2015 WL 3958111, at *13 (N.D. Cal. June 29, 2015) (citing *United States v. Twersky*, No. S2 92 Cr. 1082(SWK), 1994 WL 319367, at *5 (S.D.N.Y. June 29, 1994)). Should the Court determine that disclosure may be warranted but also determine that its own review of the relevant documents is appropriate before ordering such disclosure, it plainly may do so by ordering the Government to produce the legal instructions and argument before the grand jury to the Court for such a limited, *in camera* review.

## VI. Conclusion

For all of the foregoing reasons, Dr. Aboshady respectfully requests that the Court grant its motion to compel discovery and order the Government to produce:

- Evidence regarding the promises, rewards, or inducements provided to the witnesses the Government identified internally as "potential witnesses" as of the expiration of the 28-day discovery period over two months ago;

- Translated portions of certain proceedings that took place before the grand jury in another language; and

- The Government's legal instructions and argument to the grand jury.

/s/ Joshua N. Ruby
Peter E. Gelhaar (BBO# 188310)
George W. Vien (BBO# 547411)
Joshua N. Ruby (BBO# 679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600

Boston, Massachusetts 02110  
(617) 720-2880  
peg@dcglaw.com  
gwv@dcglaw.com  
jnr@dcglaw.com

Dated: January 11, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 11, 2017.

/s/ *Joshua N. Ruby*  
Joshua N. Ruby
