# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————   )
                        )
UNITED STATES OF AMERICA )          Criminal No. 1:16-cr-10278-NMG
                        )
v.                      )
                        )
MOUSTAFA MOATAZ ABOSHADY )          ORAL ARGUMENT REQUESTED
                        )
Defendant.              )
                        )
———————————————————   )

## MEMORANDUM IN SUPPORT OF DR. MOUSTAFA ABOSHADY'S SECOND MOTION TO COMPEL DISCOVERY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16 AND LOCAL RULE 116.3

## I.    Introduction

The Government seized *every single email* and *every single byte of metadata* from seven email accounts, including Dr. Aboshady's. This seizure includes thousands of documents protected by the attorney-client privilege and other relevant privileges, at least one of which the Government has admitted that members of its prosecution team substantively reviewed. And it includes thousands of documents irrelevant to this case and which the Government represented that it would not seize in its applications for search warrants for such material.

But despite the serious Fourth Amendment issues the Government's conduct presents, the Government has refused to disclose even the most basic information about how it reviewed and processed this information. The Government has refused to tell Dr. Aboshady's counsel:

- What "proper protocols" were in place to ensure that the Government did not violate Dr. Aboshady's legal privileges, despite the Government's representation that it followed such protocols;

- Whether such "proper protocols" included a "taint team" for evaluating potentially privileged documents;

- If a "taint team" existed, the identity of the agents or contractors who staffed it;

- Whether the Government used search terms or other restrictions to segregate the limited subset of documents the search warrants authorized it to seize from the vast majority of irrelevant documents which the search warrants did not authorize it to seize;

- To the extent the Government used such search terms or other restrictions, what those terms or other restrictions were;

- Whether the Government permitted agents to review documents without search terms or other restrictions;

- To the extent the Government permitted agents to review documents without search terms or other restrictions, what review protocols or other guidance were in place to cabin the seizure of documents to those authorized by the warrants and prevent "a general, exploratory rummaging" through the seized data. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

All such information is material to determining whether and to what extent the Government's seizure of electronic data violated the Fourth Amendment, as well as to determining whether and to what extent the Government acted in good faith so that it might escape the ordinary remedy of suppression of evidence collected in violation of the Fourth Amendment. Because all such material therefore constitutes "exculpatory information" under Local Rule 116.2(a)(2) and 116.2(b)(1)(B), the Government lacks a legal basis for withholding it.

As a result, by way of this motion, Dr. Aboshady moves this Court to compel the Government to produce:

1. All documents and information in any form regarding the Government's execution of the NEPA Warrants,[1] the Gmail Warrant,[2] and the AOL Warrant[3] and review of the documents and electronic data seized pursuant to those warrants.

---

[1] The "NEPA Warrants" are the September 18, 2013 warrants to search NEPA locations in Holbrook, MA (no bates number), Lincoln, RI (FM-USAO-000372), Winchester, MA (no bates number), and Worcester, MA (no bates number). They are attached to the accompanying affidavit of Joshua N. Ruby as Exhibit 1 through Exhibit 4.
[2] The "Gmail Warrant" is the March 13, 2014 warrant directed to Google, Inc., bearing the bates number FM0038908, and attached to the Ruby Affidavit as Exhibit 5.

Such items specifically include, but are not limited to:[4]

    A.   The names, job titles, and employers of all Government employees and contractors who conducted any portion of the review of electronic data collected in connection with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant, including, but not limited to, the agent mentioned in the Government's letter to Dr. Aboshady's counsel dated July 31, 2017 (the "July 31 Letter").[5]

    B.   All documents concerning the Government's search plan or methods used to ensure that any attorney-client or otherwise privileged communications swept up by the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant would remain privileged and confidential, including, but not limited to, the "proper protocols in place to prevent the prosecution team from accidently reviewing [Dr. Aboshady's] privileged attorney-client communications" referred to in the July 31 Letter.

    C.   If the Government employed a "taint team" or other screening procedure to identify privileged—or potentially privileged—communications, for each such employee or contractor identified in response to Request A above, identify whether he or she was a member of the "prosecution team" or the "taint team."

    D.   All documents regarding any "taint team" or other screening procedures used to identify and analyze privileged—or potentially privileged—communications seized in connection with this investigation.

    E.   All search terms used in reviewing the electronic data collected in connection with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant.

    F.   All document review protocols or guides used in reviewing the electronic data collected in connection with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant.

    G.   If the Government employed a "taint team" or other screening procedure to identify privileged—or potentially privileged—communications, for each such protocol or guide identified in response to Request F above, identify whether it was used by members of the "prosecution team," the "taint team," or both.

---

[3] The "AOL Warrant" is the March 13, 2014 warrant directed to AOL, Inc., bearing the bates number FM-USAO-000121, and attached to the Ruby Affidavit as Exhibit 6.

[4] This list is purely illustrative and in no way limits the Government's automatic discovery obligations under Local Rules 116.2(a)(2) and 116.2(b)(1)(B) or the scope of the discovery Dr. Aboshady seeks to compel the Government to produce by way of this motion.

[5] Dr. Aboshady attached the July 31 Letter as an exhibit to his August 8, 2017 discovery letter. *See* ECF No. 80-2. Dr. Aboshady's August 8 discovery letter is attached to the Ruby Affidavit as Exhibit 7.

Dr. Aboshady respectfully requests that the Court grant his motion to compel and order the Government to produce this material in discovery.

## II.    **Procedural and Factual Background**

Dr. Aboshady is a physician who was indicted on September 27, 2016 and is now before this Court.  Dr. Aboshady worked for his uncle, Dr. Fathalla Mashali, while Dr. Aboshady was studying to become an American accredited physician.  Dr. Mashali was the owner and—except for a few brief intervals—the sole attending physician at New England Pain Associates ("NEPA").  In July 2012, several NEPA employees—each of whom was either a physician assistant ("PA") or registered nurse ("RN")—wrote to the Massachusetts Board of Registration in Medicine,[6] alleging various misconduct by Dr. Mashali in his operation of NEPA and care of patients.  *United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 4-1 (the "Phelps Aff."), ¶ 9 (D. Mass. Feb. 8, 2014).  The alleged misconduct included upcoding, billing insurers for services not rendered, and inappropriate prescribing practices for narcotics.  Phelps Aff. ¶ 10.

Shortly thereafter, the Government opened an investigation into NEPA and Dr. Mashali. As part of this investigation, in September 2013, the Government obtained four separate search warrants—the NEPA Warrants—to search each of the four NEPA offices, two in Massachusetts and two in Rhode Island.  All four search warrants were executed on September 19, 2013.

In March 2014, the Government presented its health care fraud case against Dr. Mashali to a grand jury.  That grand jury returned an indictment on March 13, 2014, alleging nine counts of health care fraud in violation of 18 U.S.C. § 1347 against Dr. Mashali.  *United States v.*

---

[6] The PA's and RN's also sent copies of this letter to the Boston Field Office of the Drug Enforcement Administration and the Boston Field Office of the Federal Bureau of Investigation.  Phelps Aff. ¶ 11.

*Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 19 (the "Mashali Indictment") (D. Mass. Mar. 13, 2014).[7]

The same day that the grand jury returned the Mashali Indictment, the Government obtained two separate search warrants for the email accounts of several NEPA employees: the AOL Warrant and the Gmail Warrant. The AOL Warrant sought all electronic data from Dr. Mashali's email account from AOL, Inc. The Gmail Warrant sought all electronic data from the email accounts of six individuals, including Dr. Aboshady, from Google, Inc.

Both the AOL Warrant and the Gmail Warrant demanded that the recipient of the warrant copy and produce the entire electronic contents of each of the relevant email accounts. *See* Ruby Aff. Ex. 5 at FM0038946 ("Accounts and Files to Be Copied by Google, Inc. Personnel"); Ex. 6 at FM-USAO-000159 ("Accounts and Files to Be Copied by AOL, Inc. Personnel"). Importantly, both warrants separately enumerated the "Records and Data to be Searched and Seized by Law Enforcement Personnel," which was a more limited set of documents with some connection to the NEPA investigation. *See* Ruby Aff. Ex. 5 at FM0038948; Ex. 6 at FM-USAO-000161.

Neither the AOL Warrant nor the Gmail Warrant identified any search terms for use in isolating the "Records and Data to be Searched and Seized by Law Enforcement Personnel." Nor did the AOL Warrant or the Gmail Warrant outline any process at all for searching the voluminous electronic data returned from AOL or Google. Moreover, neither the AOL Warrant

---

[7] The government subsequently sought two superseding indictments, which were returned on October 16, 2014 and April 16, 2015. *See United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 97 (the "Mashali First Superseding Indictment") (D. Mass. Oct. 16, 2014); *United States v. Mashali*, Case No. 1:14-cr-10067-RWZ, ECF No. 131 (the "Mashali Second Superseding Indictment") (D. Mass. Apr. 16, 2015). Under the Mashali Second Superseding Indictment, Dr. Mashali now stands accused of health care fraud, conspiracy to commit mail fraud, 18 U.S.C. § 1349, and money laundering, 18 U.S.C. § 1957. Dr. Mashali has pleaded guilty to all counts of that indictment and is now awaiting sentencing.

or the Gmail Warrant specify how the Government would treat potentially privileged information or ensure that it did not breach any legally recognized privileges.

At the time that the Government obtained the Gmail Warrant and the AOL Warrant, Dr. Aboshady had engaged Michelle Hubbard, Esq., as his counsel in connection with the Government's investigation into NEPA and Dr. Mashali.  It is undisputed that, between September 2013 and March 2014, Dr. Aboshady and Ms. Hubbard exchanged hundreds of documents about the investigation, matters related to the investigation, and other matters for which Dr. Aboshady had engaged Ms. Hubbard as his legal counsel.  All of these documents are protected by the attorney-client privilege.

In March 2016—two years after obtaining the Gmail Warrant, the AOL Warrant, and the Mashali Indictment—the Government convened a different grand jury to consider evidence against Dr. Aboshady.  Following the lead of the same 2012 letter to the Massachusetts Board of Registration in Medicine that prompted the investigation into Dr. Mashali, the Government presented a case to the grand jury accusing Dr. Aboshady of altering patient encounter notes and other documents.  *See generally United States v. Aboshady*, Case No. 1:16-cr-10278-NMG, ECF No. 3 (the "Aboshady Indictment") (D. Mass. Sept. 27, 2016).  That grand jury returned the Aboshady Indictment on September 27, 2016, over four years after the Government began its investigation of NEPA and Dr. Mashali.

On November 28, 2016, the Government produced to Dr. Aboshady what appear to be the complete copies of all electronic data received from AOL and Google in response to the AOL Warrant and the Gmail Warrant.  That is, the Government produced all of the "Accounts and Files to Be Copied by Google, Inc. Personnel," *see* Ruby Aff. Ex. 5 at FM0038946, and all of the "Accounts and Files to Be Copied by AOL, Inc. Personnel," Ex. 6 at FM-USAO-000159, instead

of the more limited "Records and Data to be Searched and Seized by Law Enforcement Personnel." In all, the data consists of over 200,000 separate documents.

At the time the Government produced the electronic data received from AOL and Google, the Government did not disclose any information about how it searched the data or whether it used any process at all to avoid invading any potentially relevant legal privileges. The Government has not disclosed any such information since producing the electronic data received from AOL and Google. Nor has the Government ever disclosed to Dr. Aboshady that any of his privileged communications were seized or were contained within the electronic data received from AOL and Google.

In June 2017, in connection with review by Dr. Aboshady's counsel of the voluminous discovery—over 2 terabytes, the equivalent of over 1 trillion pages of typewritten text—produced by the Government, counsel discovered that the privileged documents Dr. Aboshady exchanged with Ms. Hubbard were contained in the documents the Government produced. Finally alerted to the potential privilege issue more than three years after the seizure, Dr. Aboshady's counsel discovered that potentially privileged emails also exist in the accounts of Dr. Mashali and another owner of one of the seized email accounts. Moreover, the 200,000-plus documents the Government produced to Dr. Aboshady in discovery include thousands of documents that do not fit in any of the categories the Government enumerated as "Records and Data to be Searched and Seized by Law Enforcement Personnel" in the AOL Warrant and the Gmail Warrant.[8]

---

[8] The documents that do not fit in any of the categories the Government enumerated as "Records and Data to be Searched and Seized by Law Enforcement Personnel" further include documents protected by other relevant privileges, including documents Dr. Aboshady exchanged with his financial advisors regarding state and federal tax matters.

After Dr. Aboshady's counsel discovered the privileged and non-responsive documents, counsel for Dr. Aboshady and counsel for the Government exchanged letters regarding Dr. Aboshady's requests for the discovery at issue in this motion. *See* Ruby Aff., Ex. 7 (Discovery Letter from Dr. Aboshady, ECF No. 80, Aug. 8, 2017); Ex. 8 (Discovery Letter from Government, ECF No. 81, Aug. 11, 2017).)  The parties conferred by email following the exchange of letters but were unable to resolve the present dispute.

### III. The Government Must Disclose Evidence Regarding Its Seizure Of Electronic Data Pursuant To The NEPA Warrants, The Gmail Warrant, And The AOL Warrant

The Government's overseizure of electronic data—again, *every single email* and *every single byte of metadata* from seven email accounts, including Dr. Aboshady's—raises, to put it mildly, serious Fourth Amendment issues.  So, too, does the presence of privileged material in the seized data.  The discovery that Dr. Aboshady seeks about how the Government has processed and reviewed this data—and who from the Government has done so—will plainly be material to the Court's determination of the merits of these Fourth Amendment issues when they come before the Court after a fully briefed motion to suppress and a thorough evidentiary hearing.  That discovery therefore constitutions "exculpatory information" such that Local Rules 116.2(a)(2) and 116.2(b)(1)(B) require the Government to produce it now.  Accordingly, Dr. Aboshady respectfully requests that the Court grant this motion to compel production of this discovery.

#### A. *Relevant Discovery Request And Government Response*

##### i. Dr. Aboshady's Discovery Request

**Request No. 1**: All documents and information in any form regarding the Government's execution of the NEPA Warrants, the Gmail Warrant, and the AOL Warrant and review of the documents and electronic data seized pursuant to those warrants.

Request No. 1 includes, but is not limited to:[9]

A. The names, job titles, and employers of all Government employees and contractors who conducted any portion of the review of electronic data collected in connection with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant, including, but not limited to, the agent mentioned in the July 31 Letter.

B. All documents concerning the Government's search plan or methods used to ensure that any attorney-client or otherwise privileged communications swept up by the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant would remain privileged and confidential, including, but not limited to, the "proper protocols in place to prevent the prosecution team from accidently reviewing [Dr. Aboshady's] privileged attorney-client communications" referred to in the July 31 Letter.

C. If the Government employed a "taint team" or other screening procedure to identify privileged—or potentially privileged—communications, for each such employee or contractor identified in response to Request A above, identify whether he or she was a member of the "prosecution team" or the "taint team."

D. All documents regarding any "taint team" or other screening procedures used to identify and analyze privileged—or potentially privileged—communications seized in connection with this investigation.

E. All search terms used in reviewing the electronic data collected in connection with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant.

F. All document review protocols or guides used in reviewing the electronic data collected in connection with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant.

G. If the Government employed a "taint team" or other screening procedure to identify privileged—or potentially privileged—communications, for each such protocol or guide identified in response to Request F above, identify whether it was used by members of the "prosecution team," the "taint team," or both.

ii.  <u>Government Response</u>

The government declines to provide the information you request for the reasons it already articulated in its letter dated July 31, 2017, attached to your filing as Exhibit 2 [D. 80-2]. Your new letter, dated August 8, 2017, does not set forth a new ground to support your request.

Your request for information appears to be based on two allegations: (1) that the government impermissibly reviewed, and built its conspiracy false statement case against Aboshady (18 U.S.C. §§ 371, 1035) upon evidence derived from, privileged communications between Aboshady and counsel Michelle Hubbard; and (2) that the government's search of the

---

[9] [Footnote 8 in Dr. Aboshady's Discovery Letter] This list is purely illustrative and in no way limits the Government's automatic discovery obligations under Local Rule 116.2(b)(1)(B).

emails seized from AOL and Google exceeded the scope of the search warrants. These allegations are meritless.

In response to the first allegation (privileged attorney-client communications), the government unambiguously told you in its letter, dated July 31, 2017, that it "had proper protocols in place to prevent the prosecution team from accidently reviewing your client's privileged attorney-client communication" and that no member of the prosecution team reviewed any communication, privileged or not, between Aboshady and Hubbard, except that one agent appears to have reviewed one email exchange (involving a third party) and marked it as not relevant. The government also informed you that the prosecutors have not seen this email and have not derived any evidence from it. Notwithstanding this information, you allege that the government "mishandle[ed] [] Dr. Aboshady's privileged communications." But even with respect to the one email the government has identified for you as having been reviewed by an agent who did not communicate its substance to the prosecutors, you fail to provide, upon the government's request, a viable explanation as to how that communication, which involves a third party, is privileged.[10] Nor do you explain how this email, which the prosecutors did not see, relates to any of the grand jury evidence or charges against Aboshady.

You state in your letter that "Dr. Aboshady's counsel *discovered*" (emphasis added) communications between Aboshady and counsel Michelle Hubbard. It was the government, however, who provided that information to you in its automatic discovery almost a year ago (admittedly, the government did not explicitly flag it for you, but it did not review it, either). As to the lack of notice to Aboshady before that date, the government had no obligation to inform Aboshady of the existence of the search warrants prior to the date the government's automatic discovery was due because Aboshady was an uncharged subject and presented, and continues to present, not an insubstantial risk of flight.

In response to your second allegation (overbroad search), the government informed you that you did not set forth a legal basis for your request. In the new letter, you continue to allege, without any support, that the government's execution of the warrants, meaning the scope of the government's search for relevant emails, exceeded the scope of probable cause set forth in the warrants. The government attempted to ascertain the basis of your allegation and requested you to identify a single exhibit the government presented to the Grand Jury that did not relate to the probable cause the government set forth in the application for the search warrants, i.e., violations of 18 U.S.C. § 1347 (health care fraud) and 21 U.S.C. § 841 (distribution of a controlled substance). You declined to identify any such exhibit; presumably, because none exists.

Mashali, Aboshady's uncle, was charged with, and pleaded guilty to, health care fraud, 18 U.S.C. § 1347; mail fraud conspiracy, §1349 (in connection with making false statements to Medicare); and money laundering, § 1957 (proceeds of health care fraud)—all charges that clearly relate to the scope of the warrants. Similarly, the government charged Aboshady with a false statement conspiracy and making false statements, in connection with seeking payment from health care programs, in violation of 18 U.S.C. §§ 371, 1035—charges that again closely relate to the probable cause set forth in the search warrants. This is not the case where, in searching electronic materials for evidence related to health care fraud and drug distribution, the government came across unrelated contraband in "plain view," say child pornography, and used that evidence to make a child pornography case against your client. The government's search,

---

[10] Dr. Aboshady's counsel provided the Government with the basis for the claims of privilege over this document, invoking the attorney-client privilege and the privileges applicable to tax returns and tax return preparers.

and the evidence it revealed, clearly establishes that it tied its search to the probable cause the government presented in its application for the warrants.

I similarly asked you to provide a single case or statute requiring the government to disclose its search terms in this context. You provided none.[11] In any event, the government's hands are not tied by search terms when reviewing electronic evidence. First, the search terms can easily miss relevant information. For example, Aboshady often used the term "fix" as a euphuism [sic] for falsifying medical records. Moreover, electronic evidence may contain graphics and other materials not susceptible to text recognition, and sometimes text recognition software may fail to pick out the relevant text. This case also potentially involves the use of a foreign language. Finally, the search warrant itself did not confine the government to use any particular search terms.

In this context, your request for the government's search methodology, protocols, guides, search terms, the names of agents who executed the search, among other things, lacks any merit.

Thus, you have no legal basis to request any information you seek. In the meantime, the government asked you to file a timely motion to compel discovery, if you remain unpersuaded by the government's response, to allow the government to respond to your motion by August 22, 2017, the date of the final status conference.

### B. Argument

i. The Discovery Dr. Aboshady Seeks Is "Exculpatory Information" Under Local Rule 116.2(a)(2) And 116.2(b)(1)(B) And Must Be Produced

Local Rule 116.2(a)(2) defines "exculpatory information" to include "information that

*tends to* . . . cast doubt on the admissibility of evidence that the government anticipates using in

its case-in-chief, that *might* be subject to a motion to suppress or exclude, which would, if

allowed, be appealable pursuant to 18 U.S.C. § 3731." D. Mass. L. R. 116.2(a) (emphasis

added). The Government must produce such information as part of its 28-day discovery

obligations. *See* D. Mass. L. R. 116.2(b)(1)(B). Local Rules 116.2(a)(2) and 116.2(b)(1)(B)

include "information . . . material to the merits of [a] [m]otion to [s]uppress." *See United States

v. Henderson*, 265 F. Supp. 2d 115, 116 (D. Mass. 2002); *see also United States v. Jordan*, No.

09-10139-JLT, 2010 WL 625280, at *3 (D. Mass. Feb. 23, 2010) ("[I]nformation that casts doubt

---

[11] Dr. Aboshady's counsel cited *United States v. Wey*, ___ F. Supp. 3d___, No. 15-CR-611 (AJN), 2017 WL 2574026 (S.D.N.Y. June 13, 2017) to the Government in response to the Government's request. In later correspondence after the filing of the Government's discovery letter, the Government attempted to distinguish *Wey* because *Wey* addressed the introduction of evidence regarding search terms and review procedures at a suppression hearing. When asked how evidence which is relevant at a suppression hearing—as *Wey* considers search terms and review procedures to be—falls outside the ambit of Local Rule 116.2(b)(1)(B), the Government did not respond.

on the accuracy of the information in the search warrant affidavit may 'cast doubt on the admissibility of evidence the government anticipates offering in its case-in-chief,' i.e. the fruits of the search."). Accordingly, to the extent that the Government has information that is "material and cast[s] doubt on the admissibility of the material in the government's case-in-chief or could be subject to a motion to suppress, Local Rule 116.2(B)(1)(b) requires production." *United States v. Scott*, No. 10-10264-RGS, 2013 WL 3105615, at \*4 (D. Mass. June 17, 2013).

Here, Dr. Aboshady seeks precisely the sort of discovery that is highly relevant to the merits of a motion to suppress electronic data seized pursuant to a search warrant. "[B]oth the scope of a seizure permitted by a warrant, and the reasonableness of government conduct in executing a valid warrant, can present Fourth Amendment issues." *United States v. Ganias*, 824 F.3d 199, 209-10 (2d Cir.), *cert. denied*, 137 S. Ct. 569 (2016) (collecting cases). Moreover, even in the presence of a Fourth Amendment violation, the Government may attempt to establish that suppression is an inappropriate remedy by showing that the Government acted in good faith with respect to the search and seizure authorized by the warrant. *See id*. at 223 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Several courts addressing similar facts involving overseizure of electronic data have recognized the relevance of the exact same discovery that Dr. Aboshady seeks here to these issues of scope, reasonableness, and good faith in making the ultimate ruling on a motion to suppress.[12]

For example, in *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012), the Government seized and retained "all imaged electronic documents, including personal emails, without any review whatsoever to determine not only their relevance to this case, but also to determine whether any recognized legal privileges attached to them." 860 F. Supp. 2d at 215.

---

[12] Dr. Aboshady's enumeration of potential grounds for a future motion to suppress does not purport to be exhaustive, and Dr. Aboshady expressly reserves the right to move to suppress on any other basis in such a future motion.

The Court ordered suppression of all seized electronic evidence, reasoning, among other bases for its decision, that the failure to convene a "taint team" or otherwise take any steps to address the presence of potentially privileged documents in the seized electronic data was unreasonable and in violation of the Fourth Amendment.  *See id.*; *see also United States v. Taylor*, No. CRIM. 10-86-P-H, 2010 WL 2924414, at *1-2 (D. Me. July 16, 2010) (identifying reasonable "taint team" protocols involving a "filter agent" and "filter AUSA" for review of potentially privileged documents in seized electronic data).

Similarly, in *United States v. Wey*, ___ F. Supp. 3d ___, No. 15-CR-611 (AJN), 2017 WL 2574026 (S.D.N.Y. June 13, 2017), the Court conducted an extensive evidentiary hearing on a motion to suppress, taking testimony on the search procedures the Government used on seized electronic data, including search terms used, document review guides, and the adequacy of the Government's taint team procedures.  *See* 2017 WL 2574026 at *13-16.  After holding that the relevant search warrants were invalid, the Court concluded that the good faith exception did not save the seized material from suppression.  *Id.* at *27-39.  In particular, the Court relied on the absence of an adequate review protocol to guide the review of seized material, *id.* at *33-34, and the use of search terms developed long after the issuance of the warrant to use on documents already deemed non-responsive to the warrant, *id.* at 36-37, to support its finding that the Government had not met its burden to show that it acted in good faith.

The discovery Dr. Aboshady seeks here is in line with the evidence these courts have considered and relied upon in ruling on motions to suppress in similar circumstances.  As in *Metter*, the Government's treatment of irrelevant material and potentially privileged material— including whether the Government has made any attempt to convene a "taint team" or otherwise review potentially privileged material in a timely fashion and how it has done so—is material to

whether the Government has acted reasonably and within the scope of the search warrants. *See* 860 F. Supp. 2d at 215. And as in *Wey*, the Government's use of search terms and the presence or absence of an adequate review protocol are material to determining whether the government acted consistently with the warrants' limitations and in good faith. *See* 2017 WL 2574026 at *33-34, 36-37. Finally, at bottom, all the discovery Dr. Aboshady seeks is material to the ultimate determination of whether the government effected an impermissible "general, exploratory rummaging" through the seized electronic data, *see Coolidge*, 403 U.S. at 467, or an "investigatory dragnet that the [F]ourth [A]mendment was designed to prevent," *see United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980). It follows that all the discovery Dr. Aboshady seeks is "material to the merits of [a] [m]otion to [s]uppress," *see Henderson*, 265 F. Supp. 2d at 116, and must be produced pursuant to Local Rules 116.2(a)(2) and 116.2(b)(1)(B).

To be clear, that ultimate issue of whether and to what extent the Government exceeded the terms of the search warrants or otherwise violated the Fourth Amendment without acting in good faith is not now before the Court. That issue is for later decision after a fully briefed motion to suppress and an evidentiary hearing on disputed facts relevant to the motion. The only matter now before the Court is whether the government must produce the discovery Dr. Aboshady seeks about how the Government executed the search warrants. Because that discovery is material to a motion to suppress, Local Rules 116.2(a)(2) and 116.2(b)(1)(B) supply the answer: yes, the Government must do so.

ii. The Government's Arguments Against Disclosure All Relate To The Merits Of A Potential Suppression Motion And Do Not Address Discoverability

In the Government's responses to Dr. Aboshady's requests for discovery about the manner in which it executed the search warrants and seized the relevant electronic data, the Government focuses on the merits of potential suppression arguments that Dr. Aboshady has not

raised yet.  These arguments are premature and only highlight the need for adequate discovery prior to the briefing, evidentiary hearing, and decision on the motion to suppress that Dr. Aboshady intends to file.

For example, the Government conclusorily asserts that it had "proper protocols in place to prevent the prosecution team from accidently reviewing [Dr. Aboshady's] privileged attorney-client communications."  Ruby Aff., Ex. 7 at 11 (ECF No. 80-2 at 2).  The Government appears to concede that whether any such protocols were actually "proper" is material to a motion to suppress the electronic data seized pursuant to the search warrants.  If that is so, then the protocols and the information Dr. Aboshady seeks about them are plainly discoverable "exculpatory information" under Local Rules 116.2(a)(2) and 116.2(b)(1)(B).  But, even leaving aside that the Government pointedly does not represent that proper protocols were in place to protect the privileges of Dr. Mashali and others, the Government refuses to disclose what those protocols were, who implemented them, and how they were implemented.  And the Government refuses to disclose how, given that those protocols were in place, the Government's prosecution team reviewed at least one document which Dr. Aboshady asserts is privileged.[13]  Until the Government produces this information and Dr. Aboshady has the opportunity to test it at an evidentiary hearing, the Court will lack an adequate factual record to determine whether the Government has complied with the Fourth Amendment with respect to its execution of the search warrants.

Similarly, the Government's discovery letter appears to assert that Dr. Aboshady may only properly move to suppress based on an overbroad execution of the search warrants if evidence presented to the grand jury "did not relate to the probable cause the government set

---

[13] Whether this document is actually privileged is likewise not before the Court at this time.  If the Court believes it would assist the determination of this discovery motion, Dr. Aboshady is prepared to submit the document for *in camera* review and fully articulate the claims of privilege over the document.

forth in the application for the search warrants, i.e., violations of 18 U.S.C. § 1347 (health care fraud) and 21 U.S.C. § 841 (distribution of a controlled substance)." Ruby Aff., Ex. 8 at 2. Nothing in this assertion addresses whether the discovery that Dr. Aboshady seeks here is material to the merits of a motion to suppress the electronic data seized pursuant to the search warrants. Moreover, the Government cites no authority for this proposition, and, in fact, the law is to the contrary. *See*, *e.g.*, 2017 WL 2574026 at *39-41 (suppressing all evidence seized pursuant to search warrants regardless of whether seizure of particular grand jury exhibits was permitted); *Metter*, 860 F. Supp. 2d at 215-16 (same).

The Government's discovery letter also appears to suggest that agents were permitted to review documents without any limiting search terms applied upfront. Ruby Aff., Ex. 8 at 2. Again, nothing in this suggestion addresses whether the Government's search terms, review protocols, and other search procedures are material to the merits of a motion to suppress the seized electronic data. Instead, if the Government reviewed electronic data without using search terms, then it becomes even clearer that the document review protocols or other materials used to guide the agents' discretion as they combed through each of the 200,000-plus electronic documents seized pursuant to the search warrants *are* material to determining whether the Government acted in good faith, *see*, *e.g.*, *Wey*, 2017 WL 2574026, at *33-34, and whether the Government violated the Fourth Amendment by conducting "a general, exploratory rummaging" through the seized data, *see Coolidge*, 403 U.S. at 467. Under Local Rules 116.2(a)(2) and 116.2(b)(1)(B), the Government must identify and produce these documents and information. But the Government refuses to do so.

Finally, to the extent that the Government obliquely claims that Dr. Aboshady must make some threshold showing that his suppression arguments are meritorious before the Government

must produce the requested discovery, the argument is baseless.  The Government has cited no
authority for such a proposition.  Nor could such an argument survive contact with Local Rules
116.2(a)(2) and 116.2(b)(1)(B), which define "exculpatory information" to include the discovery
Dr. Aboshady has requested here and require such discovery to be produced automatically under
Local Rule 116.1(c)(1).

Even if there were such a requirement—and, of course, there is *not*—Dr. Aboshady has
met it here.  It is undisputed that the Government produced to Dr. Aboshady all of the "Accounts
and Files to Be Copied by Google, Inc. Personnel," *see* Ruby Aff. Ex. 5 at FM0038946, and all
of the "Accounts and Files to Be Copied by AOL, Inc. Personnel," Ex. 6 at FM-USAO-000159.
It is therefore also undisputed that, over three years after obtaining the Gmail Warrant and the
AOL Warrant, the Government still retained electronic copies of data that it represented in its
search warrant applications that it would not seize pursuant to the warrants.  And it is undisputed
that the Government's prosecution team has reviewed at least one document which Dr.
Aboshady asserts is privileged.  That is more than enough evidence to make a threshold showing
that material factual issues exist regarding the Government's compliance with the Fourth
Amendment and the appropriate remedy.  Such a showing will merit an evidentiary hearing
when Dr. Aboshady files his anticipated motion to suppress, and it certainly requires the
Government to produce the requested discovery about its search procedures under Local Rules
116.2(a)(2) and 116.2(b)(1)(B).[14]

None of the Government's objections to the requested discovery stand up to scrutiny.  Dr.
Aboshady's discovery requests are "exculpatory information" which must be produced.

---

[14] Moreover, even in contexts where such a threshold showing *is* required—such as when challenging a warrant
based on false statements or material omissions under *Franks v. Delaware*, 438 U.S. 154, 171 (1998)—Local Rules
116.2(a)(2) and 116.2(b)(1)(B) require the production of information that would allow the defendant to make such a
threshold showing in the first place.  *See, e.g., Jordan*, 2010 WL 625280, at *3.

IV.     **Conclusion**

For all of the foregoing reasons, Dr. Aboshady respectfully requests that the Court grant

its motion to compel discovery and order the Government to produce:

1.  All documents and information in any form regarding the Government's execution of
    the NEPA Warrants, the Gmail Warrant, and the AOL Warrant and review of the
    documents and electronic data seized pursuant to those warrants.

Such items specifically include, but are not limited to:[15]

A.  The names, job titles, and employers of all Government employees and
    contractors who conducted any portion of the review of electronic data
    collected in connection with the NEPA Warrants, the Gmail Warrant, and/or
    the AOL Warrant, including, but not limited to, the agent mentioned in the
    July 31 Letter.

B.  All documents concerning the Government's search plan or methods used to
    ensure that any attorney-client or otherwise privileged communications swept
    up by the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant
    would remain privileged and confidential, including, but not limited to, the
    "proper protocols in place to prevent the prosecution team from accidently
    reviewing [Dr. Aboshady's] privileged attorney-client communications"
    referred to in the July 31 Letter.

C.  If the Government employed a "taint team" or other screening procedure to
    identify privileged—or potentially privileged—communications, for each
    such employee or contractor identified in response to Request A above,
    identify whether he or she was a member of the "prosecution team" or the
    "taint team."

D.  All documents regarding any "taint team" or other screening procedures used
    to identify and analyze privileged—or potentially privileged—
    communications seized in connection with this investigation.

E.  All search terms used in reviewing the electronic data collected in connection
    with the NEPA Warrants, the Gmail Warrant, and/or the AOL Warrant.

F.  All document review protocols or guides used in reviewing the electronic data
    collected in connection with the NEPA Warrants, the Gmail Warrant, and/or
    the AOL Warrant.

---

[15] Again, this list is purely illustrative and in no way limits the Government's automatic discovery obligations under
Local Rules 116.2(a)(2) and 116.2(b)(1)(B) or the scope of the discovery Dr. Aboshady seeks to compel the
Government to produce by way of this motion.

G. If the Government employed a "taint team" or other screening procedure to identify privileged—or potentially privileged—communications, for each such protocol or guide identified in response to Request F above, identify whether it was used by members of the "prosecution team," the "taint team," or both.

/s/ Joshua N. Ruby
Peter E. Gelhaar (BBO# 188310)
George W. Vien (BBO# 547411)
Joshua N. Ruby (BBO# 679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
peg@dcglaw.com
gwv@dcglaw.com
jnr@dcglaw.com

Dated: August 21, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 21, 2017.

/s/ *Joshua N. Ruby*
Joshua N. Ruby