```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

Criminal No. 16-10278-NMG

```
                UNITED STATES OF AMERICA

                          v.

                MOUSTAFA MOATAZ ABOSHADY
```

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S SECOND MOTION TO COMPEL DISCOVERY**
**(DOCKET ENTRY # 84)**

**October 11, 2017**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for discovery filed by defendant Moustafa Moataz Aboshady ("the defendant") seeking information to support a motion to suppress evidence seized in execution of certain search warrants. (Docket Entry # 84). Specifically, the defendant seeks to compel production of purportedly exculpatory documents and information regarding the government's execution and review of a Gmail warrant and an AOL warrant issued in March 2014 and four warrants directed at four office locations of New England Pain Associates ("NEPA") issued in September 2013.[1]

---

[1] The defendant's arguments focus on the AOL and Gmail warrants. The defendant waives any argument specific to the NEPA warrants not set out in the supporting memorandum and reply brief. See Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the

The Gmail warrant required Google, Inc. ("Google") to create an electronic duplicate of all data files associated with the defendant's e-mail account as well as with the e-mail accounts of five other individuals.  The AOL warrant required AOL, Inc. ("AOL") to create an electronic duplicate of all data files associated with the AOL e-mail account of the defendant's uncle, Fathalla Mashali ("Mashali").  The search procedure in these warrants thereafter allowed law enforcement personnel to search for and to seize data listed in specific categories set out in the "Records and Data to be Searched and Seized by Law Enforcement Personnel" ("Records and Data").  (Docket Entry # 89-9, pp. 40, 42-44); (Docket Entry # 89-10, pp. 40, 42-43).[2]  The NEPA warrants listed various items subject to seizure including patient files, bank and tax records, internal correspondence, billing records, mailing lists, financial statements, appointment books, and personnel files.  The NEPA warrants also allowed seizure of "computer hardware, computer software, computer-related documentation, and storage media" followed by "[o]ff-site searching" limited to the listed items and a return

---

state law argument that was not developed in Coons's brief"); accord U.S. v. Dyer, 589 F.3d 520, 527 (1st Cir. 2009) (before "district court, Dyer never used the term 'specific intent' to set forth the legal requirements for applying § 2G2.4(c)(2), and has waived the argument").

   [2]  Page numbers refer to the docketed page as opposed to the page of the document itself.

of the computer equipment within a reasonable time subject to one or more conditions. (Docket Entry # 89-2).

The warrants issued in connection with a criminal investigation of Mashali, who was indicted in March 2014 on charges relating to a health care fraud scheme. (Docket Entry # 62) (Docket Entry # 19, Crim. No. 14-10067-RWZ). Mashali pleaded guilty in March 2017 to an April 2015 Second Superceding Indictment charging inter alia health care fraud. (Docket Entry # 62) (Docket Entry ## 131, 329, Crim. No. 14-10067-RWZ). The defendant was indicted in September 2016 on charges stemming from the same scheme. (Docket Entry ## 3, 62).

Among other categories, the defendant seeks production of search terms, review protocols (including the existence of a taint team), and names of government employees conducting the review of the uploaded electronic data. The defendant submits that information, including the manner and the time frame of the review, is exculpatory under LR. 116.2(a)(2) and 116.2(b)(1)(B) and therefore subject to immediate production pursuant to LR. 116.2(b)(1)(B). The defendant also argues that the seizure of thousands of irrelevant documents and documents protected by the attorney-client privilege and other relevant privileges raises serious Fourth Amendment issues.

## DISCUSSION

A "search and seizure conducted under a warrant must conform

to the warrant." U.S. v. Upham, 168 F.3d 532, 536 (1st Cir. 1999). The Fourth Amendment also requires the warrant to "describe 'particularly' the place to be searched and" the "'things to be seized.'" Id. Information that could be subject to a motion to suppress is both exculpatory and subject to production under LR. 116.2(b)(1)(B). See LR. 116.2(A)(2).

   Here, the government engaged in a two-step process sanctioned under Fed.R.Crim.P. 41(e)(2)(B) ("Rule 41(e)(2)"). See U.S. v. Kanodia, 2016 WL 3166370, at *6-7 (D. Mass. June 6, 2016). Under the first step, the government executed the warrants on Google and AOL and FBI personnel received the electronic data. In order to review the material via-à-vis the second step, FBI personnel uploaded the estimated 430,081 documents received into a searchable database and applied search terms to filter out potentially privileged communications, including the name and the e-mail address of the defendant's attorney. (Docket Entry # 94-1). The FBI personnel engaged in the foregoing "were not part of the prosecution team." (Docket Entry # 94-1). The government represents and the defendant does not dispute that the government produced all of "the raw data it seized" to the defendant "as part of automatic discovery" in November 2016. (Docket Entry # 94, p. 4) (Docket Entry # 99-1, p. 4). One e-mail containing an e-mail address of the defendant's attorney slipped through the filtering process.

4

Tagged by a case agent as irrelevant, the e-mail contains facts and did not reveal the mental impressions of counsel regarding tax matters or other subjects. (Docket Entry # 98).

Similar to the circumstances in <u>Upham</u>, the seizure of all electronic data associated with the e-mail accounts and the subsequent uploading, application of search terms, and search of the data "was about the narrowest definable search and seizure reasonably likely to obtain" the targeted information. <u>U.S. v. Upham</u>, 168 F.3d at 535. As explained in <u>Upham</u>:

> A sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application; and a search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs.

<u>Id.</u> 168 F.3d at 535. A search of the 430,081 retrieved documents for the information in the Records and Data categories could not, as a practical matter, be conducted without uploading the documents into a searchable database. See <u>id.</u> (noting "that the mechanics of the search for images later performed off site could not readily have been done on the spot"). Furthermore, notwithstanding the defendant's overbreadth argument, the seizure and receipt of documents beyond those categorized in the Records and Data categories in the warrants does not contravene the Fourth Amendment's particularity requirement. See <u>id.</u> In addition, the Record and Data categories in the Gmail and AOL warrants provide sufficient information to restrict, guide, and

5

control the agents choosing the search terms and conducting the filtering.  See U.S. v. Kanodia, 2016 WL 3166370, at *5-6.

The defendant also argues that the government's unreasonable delay in conducting the search necessitates production of the search terms and the review protocols as material to a motion to suppress.  "The warrant process," however, "is primarily concerned with identifying what may be searched or seized—*not how*—and whether there is sufficient cause for the invasion of privacy thus entailed."  U.S. v. Upham, 168 F.3d at 537 (emphasis omitted and additional emphasis supplied); see also U.S. v. Tsarnaev, 53 F.Supp. 3d 450, 464 (D. Mass. 2014). ("it is 'generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant'") (quoting Dalia v. United States, 441 U.S. 238, 257 (1979)).  Rule 40(e)(2)(A) limits the 14-day "execution period to the actual execution of the warrant and the on-site activity."  Fed.R.Crim.P. 41, Advisory Committee Note to 2009 Amendment.  The rule rejects a presumptive, uniform time period to conduct the off-site review and "a substantial amount of time can be involved in the forensic imaging and review of information."  Id.  The Fourth Amendment also "'contains no requirements about when the search or seizure is to occur or the *duration*.'"  U.S. v. Syphers, 426 F.3d 461, 469 (1st Cir. 2005).  That said, in the event there is a showing of prejudice to the

defendant resulting from the delay in conducting a search, the delay may render evidence seized inadmissible.  See id.; see also U.S. v. Jarmin, 847 F.3d 259, 266-67 (5th Cir. 2017) (citing Syphers, 426 F.3d at 469).

Here, the production of the search terms, the review protocols, the documents regarding a taint team, and the documents concerning the search method are not likely to produce relevant information that could be subject to a motion to suppress based on the timing of the review and the prejudice, if any, to the defendant.  For reasons also set out by the government (Docket Entry # 94, pp. 6, 17-20), the defendant's argument is not convincing.

## CONCLUSION

In accordance with the foregoing discussion, the motion to compel (Docket Entry # 84) is **DENIED**.


      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge