```
                    United States District Court
                      District of Massachusetts
```

| | |
|---|---|
| **United States of America** ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 16-10278-NMG |
| **Moustafa Moataz Aboshady,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Moustafa Moataz Aboshady ("defendant" or "Aboshady") has been indicted on one count of conspiracy to make false statements and to conceal in connection with health care benefit programs, in violation of 18 U.S.C. § 371, and two counts of false statements in connection with health care benefit programs, in violation of 18 U.S.C. § 1035. The indictment also includes a criminal forfeiture allegation.

Pending before the Court are 1) defendant's objections to the orders of United States Magistrate Judge Marianne B. Bowler denying his motion to compel production of purportedly exculpatory documents and information regarding the government's execution of a warrant against defendant's email accounts, 2) defendant's motion to suppress certain digital evidence, 3) defendant's motion to dismiss the criminal indictment and 4)

-1-

defendant's motion for a bill of particulars. The objections and motions will be addressed seriatim.

I. **Background**

At all relevant times, defendant, who earned a medical degree in Egypt, worked with his uncle, Fathalla Mashali ("Mashali") at New England Pain Associates ("NEPA"). The government alleges that that Dr. Aboshady assisted Mashali in falsifying and causing to be falsified patient encounter notes in NEPA's medical records.

In March, 2014, the government obtained two search warrants for electronic data from Google and AOL. The Google warrant sought all electronic data from the email accounts of six individuals, including Dr. Aboshady. The AOL warrant sought the data from the email account of Dr. Mashali.

Aboshady was indicted on September 27, 2016, by a grand jury on charges stemming from his alleged involvement in a scheme to defraud several Medicare providers.

II. **Analysis**

    A. **Objections to Magistrate Judge Order**

Defendant objects to the magistrate judge's order of October 11, 2017, denying his second motion to compel discovery. That motion sought to compel

> All documents and information in any form regarding the Government's execution of the NEPA Warrants, the Gmail

Warrant, and the AOL Warrant and review of the documents and electronic data seized pursuant to those warrants.

If a party timely objects to the non-dispositive rulings of a magistrate judge on pretrial matters, the district judge must modify or set aside any part of the disputed order that is "contrary to law or clearly erroneous". Fed. R. Crim. P. 59(a).

Under the "contrary to law" requirement, the district judge reviews pure questions of law de novo, see PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010), and factual findings for clear error, Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999). Mixed questions of law and fact invoke a sliding scale of review pursuant to which

> [t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review.

In re IDC Clambakes, Inc., 727 F.3d 58, 64 (1st Cir. 2013) (internal quotation marks omitted).

The "clearly erroneous" prong requires the district judge to accept the factual findings and conclusions of the magistrate judge unless, after reviewing the entire record, the district judge has a "strong, unyielding belief that a mistake has been made." United States v. Gorski, 36 F. Supp. 3d 256, 264 (D. Mass. 2014) (quoting Phinney, 199 F.3d at 4).

Defendant contends that the order of the magistrate judge is contrary to law because it misapplies discovery standards and Fourth Amendment principles and rests on clearly erroneous factual findings. The government responds that the magistrate judge properly applied First Circuit precedent and based her decision on facts in the record.

The government complied with the two-step process for searching electronically stored information provided for in Fed. R. Crim. P. 41(e)(2)(B). The warrant authorized seizure of the disputed email accounts and the government executed the warrants on those accounts which consisted of more than 400,000 emails. Later, the government reviewed the information to determine what was consistent with the warrant. Binding circuit precedent makes clear that the warrant was not overbroad and that the government's off-site inspection did not offend the Fourth Amendment. See United States v. Upham, 168 F.3d 532, 537 (1st Cir. 1999); United States v. Kanodia, No. CR 15-10131-NMG, 2016 WL 3166370, at *7 (D. Mass. June 6, 2016) (rejecting defendant's argument that the two-step electronic search procedure violates the Fourth Amendment) (citing Upham, 168 F.3d at 535)).

The Magistrate Judge also correctly concluded that the government's retention of the electronic information did not compel suppression of the warrant-responsive emails. "Unreasonable delay in the execution of a warrant that results

in the lapse of probable cause will invalidate a warrant." United States v. Syphers, 426 F.3d 461, 469 (1st Cir. 2005) (internal quotation marks omitted) (citation omitted). Defendant does not contend that probable cause had lapsed nor is there any indication that it had.  Furthermore, the evidence would not be rendered inadmissible "absent a showing of prejudice to the defendant[] resulting from the delay." Id.  The Magistrate Judge found no such showing and defendant provides no additional specifics in his objection.  Accordingly, defendant's objections to the execution of the warrant do not include "material . . . information that tends to . . . cast doubt on the admissibility of evidence" or be subject to a motion to suppress.[1]  See Local Rule 116.2(a)(2).

Accordingly, defendant's objections to the magistrate judge order will be overruled.

### B. Defendant's Motion to Suppress Certain Digital Evidence

Defendant submits that the government's retention of emails non-responsive to a warrant constitutes an unreasonable seizure that merits suppression of all emails seized from the account. The government responds that 1) blanket suppression is not a permitted remedy, 2) the identified emails are within the scope

---

[1] Defendant's suppression argument is analyzed more fully below.

of the warrant and 3) the government need not destroy non-responsive information prior to trial.

The Fourth Amendment of the United States Constitution provides that

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Law enforcement officers must generally secure a warrant supported by probable cause before conducting a search or seizure. United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013). To satisfy the particularity requirement, a search warrant 1) must include sufficient information to guide and control the judgment of the executing officer in deciding where to search and what to seize and 2) cannot be overbroad or include items that should not be seized. United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013).

Under the exclusionary rule, improperly obtained evidence may not be used at trial. See Weeks v. United States, 232 U.S. 383, 398 (1914). Constitutional violations do not merit suppression in all cases. Herring v. United States, 555 U.S. 135, 140 (2009) ("The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies."). The exclusionary rule should be limited to

cases "where its remedial objectives are best served, i.e., to deter illegal police conduct . . . ." United States v. Burgos-Montes, 786 F.3d 92, 109 (1st Cir. 2015). Suppression of evidence is the court's "last resort", not its "first impulse". Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)).

The defendant's novel theory proceeds as follows:

1. The United States Supreme Court's decision in Riley v California, 134 S.Ct. 2473 (2014) created a "new balancing of law enforcement and privacy interests" for the "digital age".

2. A concurring opinion of the Ninth Circuit Court of Appeals sets out "best practices" for the search and seizure of electronically stored information.[2]

3. The government violated the Fourth Amendment's prohibition on unreasonable seizure when it retained electronic information that was not responsive to the relevant warrant in contravention of those best practices.

4. The emails that were responsive to the warrant should be suppressed because the "government's actions were

---

[2] United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1178 (9th Cir. 2010) (en banc) (Kozinski, J., concurring).

-7-

deliberate and done with reckless disregard for Mr. Aboshady's" constitutional rights.

The contorted theory is tenuous and unpersuasive.

First, as defendant concedes, ordering suppression of electronic information within the scope of a warrant due to retention of electronic information outside the scope of that warrant is not binding law in any federal circuit. Compare United States v. Ganias, 755 F.3d 125, 141 (2d Cir. 2014) (ordering suppression of electronic evidence where government seized and retained non-responsive computer records then searched those records and again with a second warrant) with United States v. Ganias, 824 F.3d 199, 200 (2d Cir. 2016) (en banc), cert. denied, 137 S. Ct. 569 (2016) (holding, upon rehearing en banc, that officers relied in good faith on second warrant such that evidence should not be suppressed and declining to answer whether the retention constituted an unreasonable seizure).

Second, as defendant correctly notes, Riley concerned whether police generally must secure a warrant to search a cell phone seized incident to arrest. Riley, 134 S.Ct. at 2485. There, the Court determined that a warrant was required to search the electronic contents of a cell phone, in part, because of "substantial additional intrusion on privacy beyond the

arrest" of the search. See id. at 2489.  Here, the government obtained a warrant and, although defendant maintains that the Aboshady warrant "resembles the forbidden general warrant", defendant does not challenge the validity or constitutionality of that warrant.

Third, defendant's requested remedy that the warrant-responsive emails be suppressed because of the government's retention of non-warrant-responsive emails is foreclosed by binding caselaw in this circuit. See United States v. Falon, 959 F.2d 1143, 1149 (1st Cir. 1992) (citing United States v. Riggs, 690 F.2d 298, 300 (1st Cir. 1982)) ("The remedy in the case of a seizure that casts its net too broadly is . . . not blanket suppression but partial suppression."); cf. United States v. Veloz, 109 F. Supp. 3d 305, 313 (D. Mass. 2015) (stating that "a rule of reasonableness" applies to instances in which "the government fails to expeditiously return non-responsive information") (citing Ganias, 755 F.3d at 140-41).

Fourth, defendant objects to the government's retention of intimate, personal information concerning Dr. Aboshady as non-responsive to the warrant.  The warrant authorized the government to search the email account "tifaaboshady@gmail.com" for information that helped to identify the owner of the account, co-conspirators and "ownership of any computers used to access" the account.  Accordingly, the personal information that

defendant considers unresponsive to the warrant is, in fact, responsive to the warrant to the extent it identifies Dr. Aboshady or his co-conspirators.

Defendant's motion to suppress will be denied.

**C.    Necessary caveat concerning suppression of evidence**

Nevertheless, the government's position in this case warrants additional comment.  The Aboshady Warrant employs a multi-step process.  First, Section II of Warrant Attachment B instructs Google to copy and provide to the government the entire contents of the specified email account.  Second, Section I of Warrant Attachment B provides that

> [l]aw enforcement personnel will then search the account duplicate for the records and data to be seized, which are described in Section III below.

Section III specifies categories of "records and data to be searched and seized by law enforcement personnel."

Defendant argues that "[o]n its face, the Aboshady Warrant resembles the forbidden general warrant" because it authorizes the government to search, inter alia,

> [a]ll data files associated with . . . [Dr. Aboshady's personal gmail account], [including the] contents of all email, whether draft, deleted, sent, or received, [the] content of all text or instant messages, [the] contents of all electronic data files, whether word-processing, spreadsheet, image, video, or any other content, [the] contents of all calendar data, [l]ists of friends, buddies, contacts, or any other subscribers.

To the contrary, Section III specifies that the government may seize, inter alia

evidence, fruits, or instrumentalities of violations of 18 U.S. C. § 1347 . . . the identity of the person or persons who have owned or operated the email accounts . . . the existence and identity of any co-conspirators . . . the travel or whereabouts of the person or persons who have owned or operated the e-mail accounts . . . [and] the identity, location and ownership of any computers used to access these email accounts.

Defendant submits that "in contrast to the digital data to be searched by the government, [Section III] is particularized." The structure of the warrant, combined with the different categories listed in the separate sections of the warrant, implies that the set of data described in Section III of the warrant is more restricted than the universe of section II. The government maintains, however, that this is not the case. Every one of the 430,081 retrieved documents is purportedly responsive to the warrant. The government explains that some emails identify the defendant or co-conspirators as operators of the email account. Even emails that include no identifying information or substance whatsoever are responsive to the warrant, says the government, because the emails "help to establish the location of the defendant and the computer operating the email account . . . based on the header information."

At oral argument, counsel for the government stated:

We don't believe any documents are non-responsive because the defendant has indicated that he's going to present a defense that he didn't operate the account, at least at certain periods of time.

The government also asserts that it did not catalogue the emails into "responsive" and "non-responsive" designations because it was not feasible. It explains that retention of all of the emails for more than three and a half years is "reasonable" because "there's no feasible way" for the government to sort the emails into responsive or non-responsive categories. Furthermore, the government maintains, "it's not feasible for the government to go and delete non-responsive emails" because 1) there is no reasonable culling process available and 2) it would take an inordinate number of FBI man hours to accomplish.

The warrant process "is primarily concerned with identifying what may be search or seized – not how," U.S. v. Upham, 168 F.3d at 537. The government's contention that it may therefore indefinitely hold electronic information for subsequent searches threatens, however, to breach the reasonableness requirement.

This issue arises from the intersection of the Fourth Amendment's particularity requirement and its prohibition of unreasonable seizures. A warrant must 1) limit the executing agent's "judgment in selecting where to search and what to seize" and 2) cannot be so broad as to include "items that should not be seized." United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013) (citing United States v. Upham, 168 F.3d 532,

535 (1st Cir.1999)).  Some courts have suggested that, because of the "nature of digital storage, it is not always feasible to extract and segregate responsive data from non-responsive data." United States v. Ulbricht, 858 F.3d 71, 99–100 (2d Cir. 2017) (internal quotation marks and citation omitted).  Nevertheless, reasonableness requires that searches and seizures by the government be "conducted in a manner that minimizes unwarranted intrusions upon privacy." Andresen v. Maryland, 427 U.S. 463, 482 n. 11 (1976).  Although defendant's request for suppression in this particular case and under these particular circumstances will be denied, the government's continued responsibility to minimize the extent and duration of digital discovery is not abrogated.

    **D.   Defendant's Motion to Dismiss**

Defendant avers that the indictment should be dismissed because the government presented inaccurate and misleading evidence to the grand jury.

An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is sufficient to require a trial on the merits. Costello v. United States, 350 U.S. 359, 363 (1956).  Under certain circumstances, however, it is appropriate to inquire into the proceeding surrounding a grand jury's decision to indict. United States v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989).  A court may dismiss an indictment if

there has been prosecutorial misconduct which actually biases a jury in performing its fact-finding function. Id.  Dismissal may be warranted where the government conduct is "so egregious as to deceive, overreach, or overbear the will of the grand jurors." United States v. Rodriguez, 738 F.2d 13, 17 (1st Cir. 1984).

Defendant submits that the government, by implying that Dr. Mashali, defendant's uncle, had been indicted in this case, misled the grand jury into believing that another decisionmaker had already found probable cause to believe a crime had been committed.  The government responds that it introduced ample specific information tying Dr. Aboshady to the crimes in the indictment.  Finally, defendant maintains that the "integrity of the grand jury process" was not preserved because there is no evidence that the government instructed the grand jury to exercise its own independent judgment.

The government rejoins that it did, in fact, issue such a limiting instruction to the grand jury but that it is unwilling to produce in discovery the relevant excerpt of the grand jury transcript.  At the hearing on this motion, the government presented that excerpt to the Court for in camera review and, after such review, the Court is satisfied that the grand jury was properly instructed with respect to the exercise of its independent judgment. Cf. id. (affirming denial defendant's motion to dismiss where the government "instructed the grand

jury to disregard the testimony that was unrelated to the charges before it").

Defendant's additional contentions are unavailing. He claims that the government failed to establish that the alleged false statement made with respect to Patients F,G, I and J were made "in connection with the delivery of or payment for health care benefits, items or services" as required by 13 U.S.C. § 1035. The indictment notes, however, that health care benefit programs "retained the right to audit health care providers after payment was made." The indictment also alleges that defendant falsely altered medical files to avoid detection by such an audit. Accordingly, the indictment sufficiently describes a connection between the defendant's charged acts and § 1035. See also United States v. Chhibber, 741 F.3d 852, 860 (7th Cir. 2014) (finding sufficient connection under § 1035 where defendant added "made-up medical symptoms and diagnoses in his patients' charts in order to backstop his claims for benefits from Blue Cross Blue Shield").

Finally, defendant avers that the indictment is not only internally inconsistent but also inconsistent with the evidence presented to the jury. The proffered errors are, however, de minimis, see United States v. Rivera-Ruiz, 244 F.3d 263, 271 (1st Cir. 2001), and there is no rule "permitting defendants to challenge indictments on the ground that they are not supported

by adequate . . . evidence." United States v. DeVincent, 632 F.2d 147, 155 (1st Cir. 1980) (quoting Costello v. United States, 350 U.S. 359, 363 (1956)) (additional citations omitted).

Defendant's motion to dismiss will be denied.

**E.   Defendant's Motion for a Bill of Particulars**

Defendant argues that the indictment's factual allegations are insufficient to enable him adequately to prepare for trial because he cannot determine what the government contends is false in the allegedly falsified medical records.

An indictment "need not be infinitely specific." United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993). To that end, a court need only grant a motion for a bill of particulars

> if the accused, in the absence of a more detailed specification, will be [1] disabled from preparing a defense, [2] caught by unfair surprise at trial, or [3] hampered in seeking the shelter of the Double Jeopardy Clause.

Id. at 1192-93.

None of those conditions attain here.  Apparently, defendant misreads the indictment because he states that it

> alleges that Dr. Aboshady instructed others that only true information – "consistent with the patients' prior medical histories" – should be included in medical records.

In fact, as the government points out, the indictment alleges that the defendant made false entries, and instructed others to make false entries, that would look like true entries.

In addition, the government notes that the entries were false because when they were entered the defendant "did not treat patients on the dates of service for which he created . . . encounter notes." For both of these reasons, the government has sufficiently specified why it alleges that defendant "entered, and caused [others] to enter false information." Accordingly, defendant will not be disabled from preparing a defense, will not be caught by unfair surprise and will not be prejudiced vis-à-vis his Double Jeopardy rights absent a bill of particulars.

Defendant's motion for a bill of particulars will be denied.

**ORDER**

For the forgoing reasons,

- defendant's objections to the order entered by United States Magistrate Judge Marianne B. Bowler on October 11, 2017 (Docket No. 118), are **OVERRULED;**

- defendant's motion to suppress certain digital evidence (Docket No. 127) is **DENIED;**

- defendant's motion to dismiss (Docket No. 129) is **DENIED;** and

- defendant's motion for a bill of particulars (Docket No. 131) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated February 22, 2018